

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-

D-1   ARTHUR RATHBURN
D-2   ELIZABETH RATHBURN

    Defendants.

_____/

Case: 2:16-cr-20043
Judge: Borman, Paul D.
MJ: Stafford, Elizabeth A.
Filed: 01-19-2016 At 01:10 PM
Sealed Matter (lg)

Vio:  18 U.S.C. § 1343
       18 U.S.C. § 2
       49 U.S.C. § 46312
       18 U.S.C. § 1001(a)(3)
       18 U.S.C. § 1001(2)(2)

## INDICTMENT

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

1. International Biological, Inc. (IBI) was a Michigan corporation, doing business from various addresses in the metro Detroit area. IBI's primary source of income was renting human body parts, such as heads and torsos, to customers who used the remains for medical or dental training.

2. IBI obtained most of its bodies from the Chicago-based companies Anatomical Services, Inc. (ASI) and Biological Resource Center of Illinois (BRCIL), who

2. in turn obtained many of their bodies from the Arizona-based Biological Resource Center (BRC).

3. ARTHUR RATHBURN, a resident of Grosse Pointe Park, Michigan, owned and controlled IBI. ARTHUR RATHBURN was responsible for dismembering bodies provided by ASI, BRCIL, and BRC, storing them, and preparing them for shipment to IBI's customers.

4. ELIZABETH RATHBURN, a resident of Grosse Pointe Park, Michigan, worked as a manager at IBI and interacted with many of IBI's customers.

## SCHEME TO DEFRAUD

5. Beginning in approximately January, 2007 and continuing through approximately December of 2013, ARTHUR and ELIZABETH RATHBURN, defendants herein, in the Eastern District of Michigan, did knowingly execute and attempt to execute a scheme to defraud customers, and to obtain money by means of materially false and fraudulent pretenses and representations.

## MANNER AND MEANS

6. ARTHUR AND ELIZABETH RATHBURN obtained donated bodies and body parts from ASI, BRCIL, and BRC, which IBI would then typically dismember and rent out to customers for medical or dental training. ARTHUR AND ELIZABETH RATHBURN knew that the donors of a number of these bodies had died of an infectious disease, and/or that the bodies had tested positive for an infectious disease. ARTHUR AND ELIZABETH RATHBURN sometimes obtained diseased remains from their suppliers at a reduced cost, due to the fact that end users of human remains generally reject infectious bodies and body parts for use in medical or dental training.

7. It was part of the scheme that ARTHUR AND ELIZABETH RATHBURN would provide human remains to IBI's customers, falsely representing to those customers that the remains were free of certain infectious diseases. ARTHUR AND ELIZABETH RATHBURN were aware that IBI's customers would not accept remains infected with certain diseases. The scheme included (1) directly profiting from infectious remains supplied to unwitting customers in violation of contractual agreements and (2) not disclosing to customers that IBI failed to take industry standard precautions to prevent potential cross-contamination between infectious and non-infectious remains.

8. It was a part of the scheme that ARTHUR AND ELIZABETH RATHBURN concealed positive test results for diseases such as hepatitis and HIV and/or concealment of causes of death from customers. Without this concealment, ARTHUR AND ELIZABETH RATHBURN would have been unable to provide these remains to IBI's customers, thereby losing the profit for doing so.

9. It was also part of the scheme that ARTHUR RATHBURN fraudulently increased IBI's profit by failing to take industry-standard precautions against cross-contamination of infectious agents between human remains. Instead of using industry-standard, sterilized autopsy equipment, ARTHUR RATHBURN used a chainsaw, band saw, and reciprocating saw to dismember bodies without taking sanitary precautions. In addition, ARTHUR RATHBURN stored human heads by stacking them directly on top of each other without any protective barrier, apparently disregarding any risk of cross-contamination between infectious and non-infectious remains. Pools of frozen blood and bodily fluids were found at the bottom of IBI's freezers.

10. It was also part of the scheme that, in order to fraudulently increase their profits, ARTHUR AND ELIZABETH RATHBURN shipped dismembered remains from donors who tested positive for, or died from, infectious diseases through the mails and on commercial air flights in violation of Department of Transportation Regulations and the policies of carriers such as Federal Express.

11. Over the course of the scheme, ARTHUR AND ELIZABETH RATHBURN engaged in numerous fraudulent transactions that followed a similar pattern. Documents provided by IBI to customers, such as their service agreement, include language stating that all human remains are screened for certain infectious diseases. Yet, records obtained from IBI demonstrate that remains provided to customers tested positive for these specified infectious diseases, or that the donor of the remains died of these infectious diseases. ARTHUR AND ELIZABETH RATHBURN concealed these facts from IBI's customers. IBI's customers did not expect remains infected with these diseases, and would have rejected the remains provided by IBI had they known the relevant facts.

## COUNTS ONE THROUGH THREE

### (18 U.S.C. §§ 1343 and 2 – Wire Fraud, Aiding and Abetting)

D-1   ARTHUR RATHBURN
D-2   ELIZABETH RATHBURN

12. The allegations of paragraphs 1 through 11 are included herein.

13. On or about March 26, 2011 IBI provided human remains for a course titled "Advances in Periodontology," held at the Hyatt Hotel in Cambridge, MA.

14. IBI provided for the event the head and neck of a cadaver that was tracked as BRCIL 0210002. Records from both IBI and IBI's supplier document that the remains tested positive for Hepatitis B.

15. ARTHUR RATHBURN traveled to the event in Massachusetts.

16. The IBI service agreement for this course, seized from IBI, sets out that "Unless otherwise expressly set forth . . . the anatomical materials to be provided hereunder will be screened for [HIV, Hepatitis B, and Hepatitis C]." This service agreement was signed by ARTHUR RATHBURN, via signature stamp, on behalf of IBI. It was also signed by Dr. S.L. on behalf of the customer.

17. Dr. S.L. would not have accepted the head and neck tracked as BRCIL 0210002 had he known of the positive Hepatitis B test results. He would also have rejected all remains from IBI had he known of ARTHUR RATHBURN'S violation of industry standard sanitary practices.

18. On or about the dates set forth below, in Wayne County, in the Eastern District of Michigan, defendants ARTHUR AND ELIZABETH RATHBURN, aided and abetted by one another, for the purpose of executing the scheme set forth above, did knowingly cause interstate wire transmission of the writings, signs, signals, and sounds described below for each count, each count constituting a separate count of the indictment:

| COUNT | APPROX. DATE | DESCRIPTION | TRANSACTION DETAILS |
|---|---|---|---|
| 1 | 2/22/2011 | Email of IBI Service Agreement | Emailed from MI (xxx@intlbio.com) to MA (xxx@yahoo.com) |
| 2 | 3/01/2011 | Installment for $9,654 paid to IBI via Bank of America check | Written in MA, deposited in MI, Processed in IL |
| 3 | 3/29/2011 | Installment for $3454.55 paid to IBI via Bank of America check | Written in MA, deposited in MI, Processed in IL |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS FOUR AND FIVE
### (18 U.S.C. §§ 1343 and 2 – Wire Fraud, Aiding and Abetting)

D-1   ARTHUR RATHBURN
D-2   ELIZABETH RATHBURN

19. The allegations of paragraphs 1 through 11 are included herein.

20. On or about July 25, 2011 IBI provided human remains for "Advanced Bone Grafting" training provided by the California Implant Institute (CII) held in San Diego.

21. IBI provided for the event the head and neck of a cadaver that was tracked as BRCIL 0210002.  Records from both IBI and IBI's supplier document that the remains tested positive for Hepatitis B.

22. ELIZABETH RATHBURN traveled to the event in California.

23. The IBI service agreement for this course, seized from IBI, sets out that "Unless otherwise expressly set forth . . . the anatomical materials to be provided hereunder will be screened for [HIV, Hepatitis B, and Hepatitis C]." This service agreement was signed by ARTHUR RATHBURN, via signature stamp, on behalf of IBI.  It was also signed by Dr. A.F. on behalf of CII.

24. Dr. A.F. would not have accepted the head and neck tracked as BRCIL 0210002 had he known of the positive Hepatitis B test results.  He would also have rejected all remains from IBI had he known of ARTHUR RATHBURN'S violation of industry standard sanitary practices.

25. On or about the dates set forth below, in Wayne County, in the Eastern District of Michigan, defendants ARTHUR AND ELIZABETH RATHBURN, aided and abetted by one another, for the purpose of executing the scheme set forth above, did knowingly cause interstate wire transmission of the writings, signs, signals, and sounds described below for each count, each count constituting a separate count of the indictment:

| COUNT | APPROX. DATE | DESCRIPTION | TRANSACTION DETAILS |
|---|---|---|---|
| 4 | 7/20/11 | Fax of IBI Service Agreement from J.K. "for Arthur Rathburn." | Faxed from MI to CA |
| 5 | 7/22/11 | Wire transfer of $7,360.00 to IBI from J.P. Morgan account. | Initiated in CA, Processed through FL. |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS SIX THROUGH NINE
## (18 U.S.C. §§ 1343 and 2 – Wire Fraud, Aiding and Abetting)

D-1   ARTHUR RATHBURN
D-2   ELIZABETH RATHBURN

26. The allegations of paragraphs 1 through 11 are included herein.

27. In or about October, 2012 IBI provided human remains for a meeting of the American Society of Anesthesiologists (ASA) held in Washington, D.C.

28. IBI provided for the event remains tracked as BRCIL 2011005. Records from both IBI and IBI's supplier document that the remains tested positive for Hepatitis B and HIV. A letter notifying IBI that the remains tested positive for HIV and Hepatitis B was seized from IBI's files, along with a donor summary that indicated the remains were HIV and Hepatitis positive.

29. IBI received a discount for purchasing these remains because of their positive tests for hepatitis and HIV.

30. ELIZABETH RATHBURN traveled to the event in Washington, D.C.

31. The IBI service agreement for this course, seized from IBI, sets out that "Unless otherwise expressly set forth . . . the anatomical materials to be provided hereunder will be screened for [HIV, Hepatitis B, and Hepatitis C]." This service agreement was signed by ARTHUR RATHBURN, via signature stamp, on behalf of IBI.

32. ELIZABETH RATHBURN, via email on June 27, 2012, proposed the use of BRCIL 2011005 to ASA but did not disclose that the remains tested positive for HIV or hepatitis.

33. Also seized from IBI's files was a form titled "WCC BODY PARTS/CADAVER REQUIREMENTS." This form, provided by ASA, covers a series of questions and answers concerning requirements for a particular event. On the form for the October 2012 conference, this statement appears: "all specimens have been tested negative for HIV, Hep A, B &C." The form was completed and mailed back to ASA by ELIZABETH RATHBURN on September 25, 2012.

34. ASA would not have accepted remains of BRCIL 2011005 had the organization known of the positive HIV or hepatitis test results. The organization would also have rejected all remains from IBI had the organization known of ARTHUR RATHBURN'S violation of industry standard sanitary practices.

35. On or about the dates set forth below, in Wayne County, in the Eastern District of Michigan, defendants ARTHUR AND ELIZABETH RATHBURN, aided and abetted by one another, for the purpose of executing the scheme set forth above, did knowingly cause interstate wire transmission of the writings, signs, signals, and sounds described below for each count, each count constituting a separate count of the indictment:

| COUNT | APPROX. DATE | DESCRIPTION | TRANSACTION DETAILS |
|---|---|---|---|
| 6 | 5/23/12 | Fax of IBI Service Agreement | Faxed from MI to IL |
| 7 | 6/27/12 | Email proposing use of BRCIL 2011005 | Emailed from MI to IL |
| 8 | 6/25/12 | Payment for $55,225.83 to IBI via J.P. Morgan Check | Written in IL, deposited in MI, Processed in FL |
| 9 | 9/25/12 | Email of completed cadaver requirements form from ELIZABETH RATHBURN to ASA | Emailed from MI to IL |

All in violation of Title 18, United States Code, Section 1343.

## COUNT TEN
## (49 U.S.C. 46312 – Transportation of Hazardous Material)

D-1   ARTHUR RATHBURN

36. The allegations of paragraphs 1 through 11 are included herein.

37. On or about February 29, 2012, in the Eastern District of Michigan and elsewhere, defendant ARTHUR RATHBURN, willfully caused to be delivered property containing Category B biological material as regulated by the Department of Transportation—namely a human head of an individual known to have died from sepsis and aspiration pneumonia—to Delta Cargo, an air carrier, for transportation in air commerce in violation of regulations or requirements prescribed under Federal Regulations, that is 49 CFR 175.3, 49 CFR § 171.2, and 49 CFR § 173.199.

38. In violation of these regulations, the human head was packaged in a trash bag placed within a camping cooler. Seven other human heads were also part of the shipment and packed in the same manner. Human blood was found within the coolers.

39. All in violation of Title 49, United States Code, section 46312.

## COUNT ELEVEN
## (18 U.S.C. § 1001(a)(3) – False Statements)

D-1   ARTHUR RATHBURN

40. The allegations of paragraphs 1 through 11 and 36 through 39 are included herein.

41. On or about February 16, 2011, defendant ARTHUR RATHBURN did willfully and knowingly make a materially, false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of Government of the United States by sending or causing to be sent, in the Eastern District of Michigan, a letter to the Centers for Disease Control and Prevention (CDC) declaring that the shipment described in Paragraph 37 and 38 was not infectious. The statement was materially false, because, as ARTHUR RATHBURN then and there knew, the head described in Paragraph 36 was a hazardous substance, namely Category B biological material.

42. All in violation of Title 18, United States Code, Section 1001.

## COUNT TWELVE
### (18 U.S.C. § 1001(a)(2) – False Statements)

D-1   ARTHUR RATHBURN

43. The allegations of paragraphs 1 through 11 and 36 through 42 are included herein.

44. On or about March 13, 2012, defendant ARTHUR RATHBURN did willfully and knowingly make a materially, false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of Government of the United States by stating to a federal law enforcement official, in the Eastern District of Michigan, that liquid accumulating within the shipment described in paragraphs 37 and 38 was "Listerine." The statement was materially false, because, as ARTHUR RATHBURN then and there knew, the liquid was blood.

45. All in violation of Title 18, United States Code, Section 1001.

## COUNT THIRTEEN
### (18 U.S.C. § 1001(a)(2) – False Statements)

D-1   ARTHUR RATHBURN

46. The allegations of paragraphs 1 through 11 and 36 through 45 are included herein.

47. On or about March 13, 2012, defendant ARTHUR RATHBURN did willfully and knowingly make a materially, false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of Government of the United States by stating to a federal law enforcement official, in the Eastern District of Michigan, that the eight heads within the shipment described in paragraphs 37 and 38 were embalmed. The statement was materially false, because, as ARTHUR RATHBURN then and there knew, the heads were not embalmed.

48. All in violation of Title 18, United States Code, Section 1001.

## FORFEITURE ALLEGATIONS

### (7 U.S.C. § 2024(f); 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461)

49. Upon conviction of Wire Fraud, in violation of Title 18, United States Code, Section 1343, as alleged in Count One through Nine, defendants ARTHUR RATHBURN and ELIZABETH RATHBURN shall forfeit to the United States, pursuant to 7 U.S.C. § 2024(f), 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461(c), right, title and interest in any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud, and all property, real or personal, which was used in a transaction or attempted transaction, to commit, or to facilitate the commission of wire fraud, in violation of 18 U.S.C.

50. Substitute Assets: Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendants ARTHUR RATHBURN and ELIZABETH RATHBURN shall forfeit substitute property, up to the value of the property described in Paragraphs 30 above, if, by any act or omission of the defendant, the property described in Paragraphs 30 cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been

commingled with other property which cannot be divided without difficulty.

          THIS IS A TRUE BILL

          s/Grand Jury Foreperson
          GRAND JURY FOREPERSON

BARBARA L. MCQUADE
UNITED STATES ATTORNEY

s/John K. Neal
John K. Neal
Assistant United States Attorney
Chief, White Collar Crime Unit

s/Timothy J. Wyse
Timothy J. Wyse
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI  48226
Timothy.Wyse@usdoj.gov
(313) 226-9144

Dated: January 19, 2016

**ORIGINAL**

| United States District Court<br>Eastern District of Michigan | Criminal Case | Case: 2:16-cr-20043<br>Judge: Borman, Paul D.<br>MJ: Stafford, Elizabeth A.<br>Filed: 01-19-2016 At 01:10 PM<br>Sealed Matter (lg) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008   [ ]

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes      ☒ No | AUSA's Initials: |

**Case Title:** USA v. Arthur Rathburn, and Elizabeth Rathburn

**County where offense occurred :** Wayne

**Check One:**   ☒ Felony   ☐ Misdemeanor   ☐ Petty

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____   **Judge:** _____

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

January 19, 2016
Date

Timothy Wyse
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 313-226-9144
Fax:    313-226-0816
E-Mail address: timothy.wyse@usdoj.gov
Attorney Bar #:

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.   04/13