UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        CRIM. CASE NO. 16-20043

    Plaintiff,

v.        PAUL D. BORMAN
        UNITED STATES DISTRICT JUDGE

D-1 ARTHUR RATHBURN

    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL, FOR NEW TRIAL, OR TO DISMISS**

**Background**

On January 22, 2018 Defendant Arthur Rathburn was found guilty by a jury of seven counts of wire fraud, 18 U.S.C. §1343, (Counts 1, 2, 3, 6, 7, 8, 9) and one count of illegal transportation of hazardous material (Count 10). Rathburn was acquitted on Counts 4 and 5 (wire fraud) and Count 13 (False Statement). The Court dismissed Count 12 at the conclusion of the trial. The Government chose to not proceed with Count 11.

On February 19, 2018, Defendant filed the above-styled Motion. On March 13, 2018, the Government filed a Response.

1

Federal Rule of Criminal Procedure 29(c)(1) provides for the filing of a Motion for Judgment of Acquittal to set aside a jury verdict. Federal Rule of Criminal Procedure 33 provides for the filing of a Motion for a New Trial on newly discovered evidence or any other ground in the interest of justice.

Defendant moves this Court to grant relief (acquittal, new trial, dismiss the counts of conviction) because:

> A. There was insufficient evidence to support the jury's verdict on each count he was convicted of, and the verdicts are against the great weight of the evidence,
>
> B. The convictions violate Rathburn's due process rights under the Fifth Amendment,
>
> C. The trial court's rulings deprived Rathburn of his constitutional right of confrontation, to present a defense, and right to trial by jury.

Defendant's Motion, Dkt. #136, P.2.

**<u>Discussion</u>**

As to Fraud Counts 1-3, the government relied on the testimony of Dr. Samuel Lee, a periodontist, and the documents related to a course Dr. Lee taught on March 26, 2011, that utilized human body parts provided by Rathburn, to wit, a specimen identified as BRCIL 0210002, that had screened reactive for Hepatitis B. Dr. Lee had ordered head specimens from Rathburn's business, International Biological, Inc. – (IBI). Dr. Lee's contact person and his correspondence with IBI

was with Beth Rathburn, Defendant's then-wife, and his employee Jeanette Knutson. The Service Agreement,[1] drafted by IBI set forth that the anatomical materials provided had been screened for HIV½, surface antigen, Hepatitis B and Hepatitis C virus antibody. The Material Request Form (MRF)[2] drafted by IBI stated that the anatomical materials were procured under "clean," not "sterile" conditions and tested for HIV, Hepatitis A, B and C, and also noted the above-mentioned screening.

Fraud Counts 6, 7, 8, and 9 related to Dr. Kevin Vorenkamp and his course held in Washington, D.C. in October, 2012, and the specimen identified as BRC 2011005. Dr. Vorenkamp was an anesthesiologist and director of a pain medicine training program in Seattle, Washington. His interpretation of the Service

---

[1] Defendant Rathburn's IBI Service Agreement (Gov't Trial Exh. 1A) states in pertinent part:

> Limitation on Liability: Unless otherwise expressly set forth on MRF, the anatomical materials to be provided hereunder will have been screened for HIV½, Surface Antigen, Hepatitis B and Hepatitis C Virus Antibody and shall accordingly still be treated by Service User and its research participants as if such materials may be infectious. Service Provider expressly disclaims any liability should any anatomical material prove infectious.

[2] Defendant Rathburn's IBI Material Request Form Gov't Trial Exh. 1F, Page 3, states:

> Note: All anatomical materials are procured under "clean," not "sterile" conditions and tested for HIV and Hepatitis A, B and C.

Agreement with IBI was that the specimens would be screened for HIV, Hepatitis B and C, and he expected that the cadavers would not have had positive results for those diseases.

Count 10, charged Defendant with illegal transportation of hazardous material. This dealt with a shipment of human heads in violation of U.S. Department of Transportation-regulated (DOT) hazardous substances. The transit permit (Exh. 23A) "indicated the cause of death" of one of the heads was "aspirational pneumonia, bacteria not identified and sepsis, bacterial (sic) not identified." R. 129, Pg. ID 1131, Dkt. #136, Gov't Brief, P.8). Defendant contends that the documents provided by BRC, the provider of the head to Defendant's IBI "stated that the cause of death was Parkinson's disease and respiratory failure, without any mention of sepsis or pneumonia." *Id*. At Pp. 8-9. Defendant further contends that "there was no serology test for sepsis performed at the time of death for the specimen. There was no test of the specimen BRC 1006024 for any infectious virus or bacteria once DOT took possession of it." *Id*. at 9.

As to Counts One through Three, Dr. Lee testified that he had received a specimen identified as BRCIL 0210002(02) that had tested positive for Hepatitis B. IBI had provided Dr. Lee 16 head specimens, which included the 02 specimen.

As noted *supra*, the IBI Service Agreement stated, *inter alia*, that "unless

4

otherwise expressly set forth on the MRF, the anatomical materials to be provided hereunder will have been screened for HIV½, surface antigen, Hepatitis B and Hepatitis C virus antibody . . .". Dr. Lee testified that he interpreted that to mean that he would not get a specimen that had tested positive for HIV, Hepatitis A, B and C. R. 127, TR. 1/11/18, Page ID 1395-96.

The IBI Material Request Form (MRF), as noted *supra*, which was part of the Application for Anatomical Materials provided that the anatomical materials were procured under "clean" not "sterile" conditions and tested for HIV, Hepatitis A, B and C (Government Exhibit 12E, Appendix Exhibit B).

Defendant contends that it was improper for Dr. Lee to interpret these provisions to mean that he would not receive specimens infected with these diseases. The Court disagrees with Defendant's argument. Screen means screen out: like putting a screen on your window to keep out mosquitos. If it was just screening for IBI's in house purposes, there would be no reason to put it in the Service Agreement.

With regard to the provision in the MRF Form, Page 3, that the anatomical materials "are procured under 'clean,' not 'sterile' conditions, Defendant cites Dr. Lee's testimony that "clean" is a very subjective term, and contends that "clean" not "sterile" is a vague, subjective term – that Dr. Lee interpreted thee photos of

the hygiene state of the Grinnell Street Warehouse according to his standard, and this is too subjective to support testimony regarding sanitary conditions. The Court concludes that Dr. Lee's opinion testimony was admissible as to what the photographs revealed, and further that the photographs of the conditions were provided to the jury for their determination of whether that contract provision language – clean, not sterile – was met.

Defendant's claims with regard to Counts Six, Seven, Eight and Nine related to anesthesiologist Dr. Kevin Vorenkamp's use of IBI contracted specimens. Dr. Vorenkamp interpreted the MRF's screening language to mean that the part that the anatomical specimens he received would have been screened for HIV, Hepatitis B and Hepatitis C, and that meant to him that he could expect they would not have tested positive for those diseases. The Court concurs with his logical interpretation. Further, the invoice for 2011005 from IBI's supplier BRC to IBI evidenced a discount because the specimen had tested positive.

As for Count Ten, regarding the transportation into this country of hazardous materials, Defendant contends while that specimen BRC 1006024 had a transit permit (Gov't Exh. 23A) which indicated that the cause of death was aspirational pneumonia bacteria not identified and Sepsis bacterial not identified, BRC had provided documents stating that the cause of death was Parkinson's disease and

respiratory failure. The Court finds the transit permit, that was placed into evidence before the jury was satisfactory evidence of the medical condition of that specimen, to support the conviction on Count 10.

The fraud counts were based upon human specimens that had tested positive for HIV and Hepatitis B, and had been provided by IBI to the end user doctors without disclosing the positive results of the screening.

Defendant contends that the end users received specimens, completed their courses without any injury to the doctors or their students, so there was no material misrepresentation of a material fact. The Court disagrees. There was fraud in Defendant passing off diseased specimens as not diseased, as the doctors had requested, expected, and were entitled to under the contract. The fact that neither of the doctors or their students contracted any diseases, does not absolve Defendant, after agreeing to provide specimens screened for diseases, of being guilty of fraudulently providing diseased specimens under the IBI contracts.

As noted *supra*, the IBI Material Request Form (MRF) for specimens to be used in each of the medical courses contained the following language on page 3:

> All anatomical materials are procured under "clean," not "sterile" conditions and tested for HIV and Hepatitis A, B and C.

Defendant's Exh. B, Page 3.

Defendant contends that because the IBI contract also states that the anatomical materials may be infectious, and that IBI expressly disclaims any liability should any anatomical material prove infectious, there was no guarantee that the specimens would not be infectious.

The Court rejects this argument as to general boilerplate language, in favor of the specific detailed language in the contract that the specimens would be screened for the specified infectious diseases. The fact that the screening had resulted in positive findings of infectious diseases, which positive results were not communicated to the doctor recipients, supported the fraud convictions.

The Court finds that the contract provision guaranteeing screening for the infectious diseases impels the conclusion that Defendant would not send anatomical materials that contained any of those infectious diseases. The Court rejects Defendant's argument that there was no fraud because there was not a specific provision stating that the specimen would be free of any of the diseases. The Court finds that the screening provision in IBI's contract was to assure its customers that it would act to screen out and not send diseased specimens.

The Court rejects Defendant's argument that because there was no word-for-word guarantee that the specimens would not be infected, just that they would be screened, and because they were screened, complied with that contractual

requirement, and thus there could not be any fraud in hiding the positive results of the screening, and impelling the doctors to conclude that the specimens passed the screening test for the specified diseases.

Further, the Court finds that the government's evidence established that specific specimens that tested positive were sent to the specific medical course instructors in this case.

The Court finds, as to Count 10, that the Transit Permit utilized by Defendant to ship, *inter alia*, the specimen head to Israel and back to the United States, stated that the individual had died with sepsis, there was no requirement that the government test the specimen at the time of shipment's reentry into the United States.

The required transit permit had established infectiousness in the specimen that was hazardous under the law that had been sent overseas and then returned to the United States when it was seized at the border. The fact that there was no screening of the specimen in Israel for infectious disease prior to shipping it back to the United States, or when it arrived back in the United States, does not undermine Defendant's violation of the law regarding international shipment of hazardous substances into the United States. Further, there was no proper packaging and labeling of this specimen, pursuant to DOT regulations; 49 C.F.R.

9

Ch.1, §171.2(e) and 173.199(a)(1) – 9©. Defendant's Appendix, Exh. I, Dkt. #136-5, Page ID. 1848-1850.

II

The Court rejects Defendant's claim that he was denied his right of confrontation, to present a defense, and to a trial by jury when the Court ruled that the fraud at issue was whether the Government could prove that the Defendant was aware that the screened specimen(s) had tested positive for Hepatitis B and C, or HIV when it provided the specimens to the doctors pursuant to a contract stating that the specimens had been screened for those diseases.

The Court ruled that whether the doctors had feared infection, or whether the cadavers were infectious at the time they were provided to the doctors was not at issue. The Court found that the testimony established that the recipient doctors were concerned about those diseases, relied upon the screening language in the contracts, to assure themselves that the IBI specimens would not contain the diseases, and that they would not have accepted those specimens for use in their courses had they known that the specimens tested positive for any of those diseases.

The screening requirement was contained in the IBI drafted agreement. The proofs at trial established Defendant defrauded the doctors by providing infected

anatomical specimens.

III

With regard to the IBI Service Agreement, the Defendant contended that the Court erred by permitting "inadmissible interpretations" by Government witnesses as to what the contract stated. The Court notes that the IBI Service Agreement was entered into evidence; the jury had access to it in their deliberations; and it speaks for itself.  Both the Government and Defendant went over the agreement with trial witnesses, on direct and cross-examination with a fine-tooth-comb.  Thus both parties went over the agreements time and again throughout the trial and in their final arguments. The Court notes that the agreement was before the jury, as were the suggested interpretations by the parties, in particular by the Defendants' in extensive cross examination of the witnesses. In the end, the jury had the agreements and the testimony, and decided what the words of the agreement said/meant.

IV

The Court denies Defendant's claim that he "was denied his right to due process and a fundamentally fair trial when the Government repeatedly exposed the jury to graphic and gruesome photographs."

This trial necessarily involved many graphic and gruesome photographs

because they were essential to the proofs in this case, which charged Defendant Rathburn with providing diseased body parts, primarily heads, to doctors for use in seminars, and also with shipping a diseased head, along with other heads from a foreign country to the United States in a container that violated the requirements for shipping of hazardous materials.

There were no containers of anatomical specimens introduced at the trial. Second, the Court limited the number of such exhibits that would be permitted into evidence to the necessary minimum necessary to provide the government an opportunity to present and prove its case.

The Court acted to reduce the impact of such evidence to a minimum by ordering that each juror be provided a separate folder with a specific photo that the juror would view only for a brief moment when it was necessarily connected to the testimony. Further, the Court ordered that when that particular point of testimony concluded, each juror would return that folder of <u>that</u> picture (not all the pictures) to the Government paralegal. The Court did not permit the jurors to maintain the picture folders in their possession or in the juryroom throughout the trial.

With regard to the one juror who inquired of a Court jury official if there was available counseling to deal with his personal reaction to his viewing of the pictures, that issue was limited to that single juror. The Court discussed that

situation with counsel sidebar, and the parties agreed to make that juror an alternate juror, who was excused prior to jury deliberations.

Thus, in conclusion, there is no question that some of the pictures were graphic and gruesome, but that was because the Defendant's business involved infected human anatomical specimens, and the charges related to his procuring, processing, and sending those specimens to medical doctors seeking non-infected specimens for use in their seminars.

V

There was also an issue relating to the sanitary condition of the warehouse where Defendant stored and processed these specimens, to wit, whether it was maintained in a "clean" but not "sterile" condition. The jurors saw the pictures of the warehouse, heard the testimony of multiple witnesses about the condition of the warehouse, and was sufficiently informed to decide this issue.

VI

Defendant contends that the conviction on Court Ten – improper transporting of hazardous material – "should be dismissed because the Federal Regulations regarding Category B infectious substances violates due process by failing to give fair notice of precisely what conduct is prohibited, is unconstitutionally vague and the government's witness gave misleading testimony

13

about what the regulations require." Defendant's Post Trial Motion, Dkt. # 136, P. 33. The U.S. Code provision upon which the regulation was issued, states in pertinent part:

Title 49 U.S.C.A. §46312, Effective August 10, 2005 states:

> (a) In general – A person shall be fined under title 18, imprisoned for not more than 5 years, or both, if the person, in violation of a regulation or requirement related to the transportation of hazardous material prescribed by the Secretary of Transportation under this part or chapter 51 –
>
>> (1) willfully delivers, or causes to be delivered, property containing hazardous material to an air carrier or to an operator of a civil aircraft for transportation in air commerce; or
>>
>> (2) recklessly causes the transportation in air commerce of the property.
>
> (b) Knowledge of regulations – For purposes of subsection (a) knowledge by the person of the existence of a regulation or requirement related to the transportation of hazardous material prescribed by the Secretary under this part or chapter 51 is not an element of an offense under this section but shall be considered in mitigation of the penalty.

Defendant contends that "[t]he clear language of the federal regulation is to regulate <u>infectious</u> substances . . . for Category B . . . when the infectious substance is released outside of its protective package." *Id*. P. 33. Defendant further claims that "the Department of Transportation (DOT) contradicts the clear language of the regulation by including within the definition and classification criteria, 'any

14

material known or reasonably expected to contain a pathogen' for Category B infectious substances." *Id*. Regulations cited *supra* at P.10.

Defendant contends that whether the specimen was infected at the time of death, does not constitute an infectious substance at the time of transportation. Additionally, Defendant challenged DOT Representative Mark Razny's testimony that the only way to avoid the classification of an infectious disease is to cremate or autoclave [pressure cook] the specimen, was contrary to the regulations and led to an improper conviction on this count. The Court disagrees with Defendant's contention, and finds Razny's testimony credible as to this issue, and the regulation proper.

Defendant contends that the Category B Hazardous Material charged in the indictment applies to <u>infectious</u> substances, as opposed to "<u>infected</u>" substances. Specifically, Defendant contends that if the pathogens have been neutralized or inactivated, then the substance no longer poses a health risk. Defendant's Brief, Dkt. #136, P.39. Defendant concludes that the regulations "are contradictory and vague to the extent that precisely what conduct prohibited is not clearly defined." *Id*.

The Court concludes that the statute is clear, and that the regulations are neither contradictory nor vague. Further, as noted in regulations cited *supra*, at Pp.

9-10, there was no proper packaging or labeling of this infectious specimen.

## VII

As to Defendant's argument that this case should have been tried as a breach of contract claim rather then a charge of criminal fraud, the Court reaffirms its conclusion at trial that this criminal case involved charges of fraud, not breach of contract. The key issues in this trial were pure and simple: whether Defendant Rathburn was guilty of fraud, and whether he was guilty of illegal transportation of hazardous material. While Defendant's preference would have been a civil suit charging breach of contract, the Court concludes that the case was properly charged under the criminal fraud statute, and the convictions were proper under the Sixth Circuit Wire Fraud instruction.

The Sixth Circuit Pattern Criminal Jury Instructions, 2017 Edition, state in pertinent part:

10.02 Wire Fraud (18 U.S.C. §1343):

> (D) A misrepresentation or concealment is "material" if it has a natural tendency to influence or is capable of influencing the decision of a person or ordinary prudence and comprehension.

Defendant also argues that his conviction on Court 10 should be overturned. The transporting of the human heads comes under Category B human remains. Department of Transportation Officer Mark Razny testified that Class B material

16

could not be shipped without removal of infectious matter by prior incineration or autoclaving. Razny also testified that this shipment included improper packaging and labeling under the regulations. The jury agreed that the DOT regulations were violated by Defendant.

The DOT regulations were issued to protect public health. The legal issue is Defendant contends, *inter alia,* that to prosecute under the facts in this case, requires that each and every shipment into the United States from a foreign nation must be subjected to an ad hoc medical evaluation upon entry. The Court disagrees. The DOT can, pursuant to Congressional authorizing legislation, issue regulations to protect the public health's from a category of infectious matter coming into the U.S., as they have done here. The Court concludes that these regulations are permissible.[3]

The jury heard government testimony concerning the DOT's regulations and interpretations, and heard defendant's extensive cross-examination of DOT Official Mark Razny, and concluded beyond a reasonable doubt that Defendant had

---

[3] The Court notes that the initial paragraph of the recent indictment of Volkswagon executive Martin Winterkorn states:
> 1. The purpose of the Clean Air Act and its implementing regulations was to protect human health . . .

*United States v. Winterkorn*, #16-20394, Dkt. #120, filed 3-14-18. So too, here with regard to the transportation of hazardous substances.

intentionally violated those regulations.

The Court concludes that the Government introduced an extensive amount of evidence at trial supporting the jury's guilty verdicts, that Defendant Rathburn has defrauded customers of his International Biological, Inc. by providing them with anatomical specimens that contrary to his IBI contract screening requirement, had tested positive for HIV and hepatitis. The Court concludes that trial evidence also established that Defendant Rathburn also defrauded his customers in failing to provide the promised "clean," but not "sterile" conditions in his processing warehouse. The Court also finds that the conviction under Court 10 relating to hazardous materials was proven and proper.

For the above-stated reasons, the Court DENIES Defendant Rathburn's Motion for Judgment of Acquittal, for New Trial, or to Dismiss.

SO ORDERED.

        s/Paul D. Borman
        PAUL D. BORMAN
        UNITED STATES DISTRICT JUDGE

Dated: May 9, 2018

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 9, 2018.

        s/Deborah Tofil
        Case Manager