UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

ARTHUR RATHBURN,

    Petitioner

v.               No. 16-2043 (PDB)

UNITED STATES OF AMERICA,

    Respondent

**MOTION FOR COMPASSIONATE RELEASE PURSUANT TO**

**18 U.S.C. SECTION 3582(c)(1)(A)(i)**

    Petitioner, Arthur Rathburn, seeks emergency relief from the dangerous health conditions under which he is being detained at FCI Loretto. As the court may be aware, on April 3, 2020, the Attorney General issued a memorandum providing guidance to the director of the Bureau of Prisons regarding the increase of the us of home confinement at institutions most affected by COVID-19. (See 4/3/2020 AG Memorandum, http://www.justice.gov/file/1266666/download)

    Petitioner Rathburn is an appropriate candidate for home confinement based on the criteria established by the Attorney General in his March 26, 2020 memorandum to the Director of the Bureau of Prisons and incorporated into the April 22, 2020 Bureau of Prisons memorandum regarding home confinement:

1

It should be noted that public safety reasons, in accordance with the March 26, 2020 memorandum from the Attorney General, and to ensure BOP is deploying it's limited resources in the most effective manner, the BOP is currently assessing the following factors to ensure inmates are suitable for home confinement:

1) Reviewing the inmate's disciplinary history for the past twelve months;

2) Ensuring the inmate has a verifiable release plan;

3) Verifying the inmate primary or prior offense history does not include violence, a sex offense or terrorism related;

4) Confirming the inmate does not have a current detainer;

5) Reviewing the security level of the facility currently housing the inmate, with priority given to inmates residing in low and minimum security facilities;

6) Reviewing the inmates' score under P.A.T.T.E.R.N., with inmates who have anything above a minimum score not receiving priority treatment

7) And reviewing the age and vulnerability of the inmate to the COVID-19 in accordance with the CDC guidelines.

Petitioner Rathburn meets all of these requirements. He has had no disciplinary infractions since his incarceration. His release plan includes living with his cousin in her home in White Pigeon, Michigan, his crime(s) of conviction was non-violent; he is a citizen of the United States and does not have a detainer. He is currently housed at FCI Loretto, a low security institution. He has minimum P.A.T.T.E.R.N. score and he is a sixty-six year old with a history of pre-existing conditions which put him at risk of

2

developing severe complications or even dying should he contract COVID-19.

Petitioner Rathburn suffers from a variety of illnesses including psoriatic arthritis (stage 3) which is pre-cancerous. He has a compromised immune system, poor kidney function and is easily susceptible to influenza, pneumonia and other lung infections. Prolonged treatment and use of certain prescription medications have caused pulmonary edema and inflammation which further contribute to petitioner's immuno-deficiencies.

Petitioner is currently taking the following medications:

- Remicade Infusions - Methotrexate
- Folic Acid
- Omeprazole
- Atorvastatin
- Tarazosin
- Sulfamethoxazole
- Isoniazid
- Pyridozine
- Rifapentine
- Meloxicam
- Terazosin
- Bisacody EC
- Docusate Sodium
- Betamethasone

Petitioner is receiving many of the listed medications for treatment of TB and psoriasis and other released illnesses. Additionally, petitioner has a BMI exceeding 30%.

Given that petitioner Rathburn is an appropriate candidate for home confinement pursuant to the Attorney General and BOP's guidance, pursuant to

3

18 U.S.C section 3582(c)(1)(A)(i), he is similarly an appropriate candidate for compassionate release due to his pre-existing medical conditions and the severe consequences he could suffer if he contracts the virus -- extraordinary and compelling reasons to warrant a reduction in sentence. As such, petitioner respectfully moves for a reduction of his sentence to time served based on compassionate release pursuant to 18 U.S.C. section 3582(c)(1)(A)(i).

Reducing Petitioner Rathburn's sentence to time served would be consistent with the 3553(a) factors and applicable policy statements issued by the sentencing commission. Petitioner was sentenced to 108 months incarceration on May 22, 2018. Given his pre-sentence confinement, post-sentence confinement and earned good time credits, petitioner has served more than 50% of his sentence. While petitioner's crime(s) of conviction are undoubtedly serious and his sentence reflects the seriousness of those crimes, he should not be placed in a position where his life is at risk on a daily basis due to COVID-19 pandemic.

Any concern about petitioner Rathburn's risk of recidivism should be balanced by the three-year term of supervised released imposed at sentencing.

Petitioner has exhausted his administrative remedy rights since he first applied for transfer to home confinement as early as April 7, 2020 while housed in the East Unit, 112 at Milan Federal Correctional Institute.

Pursuant to the first step act, this court has the authority to reduce petitioner's sentence to time served.

> [u]pon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse

4

of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier...,after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that--(i) extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statement issued by the sentencing commission.

18 U.S.C. Section 3582 (c)(1)(A)

U.S.S.G. Section 1B1.13 application note 1 (2018) provided that "extraordinary and compelling reasons" include (A) the medical condition of the defendant (B) the age of the defendant, (C) his or her family circumstances, and (D) any other extraordinary and compelling reasons that the Director of the Bureau of Prisons determines. Many courts have therefore applied the first step act in granting compassionate release and reducing sentences for defendants based on the extraordinary and compelling reasons of inmates' medical conditions and the severe health risks posed by the coronavirus in confinement.

## COVID-19 POSES PHYSICAL RISKS TO RATHBURN AS AN FCI LORETTO INMATE

Conditions of confinement create an optimal environment for the transmission of contagious disease. See Joseph A. Bick Infection Control In Jails and Prisons 45 Clinical Infectious Diseases 1047, 1047 (Oct 2007), https://doi.org/10,1086/52910; See also The York Times "An Epicenter of the Pandemic will be Jails and Prisons, if inaction continues," March 16, 2020 http://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html. Public

5

health experts are unanimous in their opinion that incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe," and "infection control is challenging in these settings," See Yale Law School, "Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice President Mike Pence and Other Federal, State and Local Leaders from Public Health and Legal Experts in the United States," March 2, 2020. https://bit.ly/2W9v6OS.

As of today's date, the BOP reports 1,887 inmates and 703 staff members as having confirmed positive test results and 124 inmate deaths and 2 staff member deaths. This is in addition to the 12,752 inmates and, 1,127 staff members of the BOP reports as having recovered from the virus. Currently, FCI Loretto reports no inmates with positive tests, 7 staff members with positive tests, 57 inmates recovered and three staff members recovered and no inmates deaths or staff deaths.

However, these figures do no accurately represent the number of inmates who may have the virus while incarcerated as there is a lack of testing performed by the BOP. According to an investigatory report published by Vice News and the Marshall Project, [f]ederal officials tried to conceal the extent of the
> outbreak by limiting testing - so that they didn't
> have to report positive cases - and refusing to
> recognize one staff death. As of Tuesday [June 16, 2020],
> they had completed testing on less than 13 percent of
> prisoners in BOP facilities." The Marshall Project,

6

<u>"I Begged Them to Let Me Die:" How Federal Prisons Became Coronavirus Death Traps.</u> <u>https://www.themarshall project.org/2020/06/18/i-begged-them-to-let-me-die-how -federal-prisons-became-coronavirus-death-traps.</u>

As is now commonly known, President Trump has suggested that a decline in testing could lower the United States' infection rates in the general public. "Our testing is so much bigger and more advanced than other countries (we have done a great job on this!) that it shows more cases. Without testing, or weak testing, we would be showing almost no cases. Testing is a double-edged-sword-makes us look bad, but good to have!!!" @realdonaldtrump, June 15, 2020 <u>https://twitter.com/realDonald Trump/status/1272532925460984.</u> It appears the BOP has been following this rationale all along.

Petitioner Rathburn's request for relief is reasonable and necessary in light of the exceptionally dangerous conditions of incarceration, his medical concerns and the BOP's demonstrated inability to safeguard inmates from this potentially lethal virus and provide adequate medical care.

Per the BOP, there are currently seven staff members who have confirmed positive test results. An staff member testing positive has the potential to pass the virus to the inmate population which could cause an outbreak at FCI Loretto. Staff members who test positive are encouraged to report for work and only those displaying symptoms are discouraged from doing so. However, we know that one may be asymptomatic and be infected and infect others.

7

As of today, Pennsylvania has suffered 157,814 confirmed positive and probable cases and 8,081 deaths. PA Department of Health, COVID-19 Data for Pennsylvania, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx.

As is the case in more than 35 states, the case count in Pennsylvania is also on the rise. Lehigh Valley Live, September 28, 2020, PA Coronavirus Update: Nearly 1.6k New Cases over 2 Days: Lehigh Valley adds to it's case total PA. COVID-19 County Map(09/28/20).

In addition, on May 25, 2020 the Bureau of Prisons announced that it:

> will began movement of approximately 6,800 new inmates who have been committed to the Bureau in recent months.

Any one of these newly committed inmates being moved from detention centers and other facilities around the country to FCI Loretto could introduce the coronavirus to the inmate population and launch the spread throughout the institution. The potential for this to occur is extremely high. Once a single infected individual is introduced to FCI Loretto (symptomatic or asymptomatic), the incidence of "spread" will escalate rapidly given the conditions.

To be clear, Petitioner Rathburn and all inmates at FCI Loretto are not able to utilize the majority of the safe practices recommended by the CDC to keep individuals safe from COVID-19. Per the CDC, everyone should 1) Clean their hands often 2) Avoid close contact 3) Cover their mouths and noses with a cloth face cover when around others 4) Cover coughs and

8

sneezes and 5) Clean and disinfect frequently touched surfaces daily. See Centers for Disease Control and Prevention,"How to protect yourself and others." https://www.cdc.gov/coronavirus/2019-ncov/present-getting-sick/prevention.html

Additional guidance stresses avoiding indoor gatherings of large groups (10 or more), getting fresh air after being indoors longer than 45 minutes and keeping good ventilation by opening windows and doors whenever possible.

Petitioner Rathbuirn is not able to properly clean his hands often, avoid close contact with others, clean or disinfect frequently touched surfaced, limit indoor gatherings or time spent indoors, provide good ventilation or open windows or doors. Living cubes are approximately 150 square feet and house six to eight inmates. Inmates share toilets, sinks, showers, and other common areas. The TV room chairs are organized in rows with arms of chairs touching, providing a distance of less than two feet from inmate to inmate. In Centeral housing unit (where Rathburn is housed), all windows are sealed shut and doors can only be opened by correctional staff utilizing their keys. Outdoor time is currently restricted to every other day for two hours (up from one ~~hour/day 3 times per week for the previous 5 ± months), which means 22 hours spent in the tightly packed, sealed unit.~~

Communal areas and devices, including phones, computers, hot water dispenser, ice machines and other surfaces are cleaned infrequently if at all. No hand sanitizer(s) are available to be purchases in commissary or provided free of

9

charge by the institution since they could have to contain alcohol to be effective against the coronavirus. The same is true for any disinfectants(s) which could be used.

As long as these conditions are present and testing is minimal at best, COVID-19 can be easily spread at FCI Loretto, putting each inmate and staff member at risk. As of this date, there have been 124 "reported" inmate deaths in the BOP system. As we are all aware, this rampant virus does not discriminate. However, inmates in densely populated jails with inadequate and mediocre medical care and safeguards, have a far greater chance of infection and will become victims in short order.

## CONCLUSION

Due to the dangerous conditions that could befall petitioner Rathburn should a COVID-19 outbreak emerge at FCI Loretto due to his multiple, underlying medical conditions, petitioner respectfully requests that the court reduce Rathburn's sentence to time served and order order his immediate release. Such a decision would be consistent with the 3553(a) sentencing factors for the reasons states Supra. Extraordinary and compelling circumstances require swift and uncommon action. Inmates at FCI Loretto remain at danger for testing positive for COVID-19 with potential fatal consequences. It has occurred at other BOP facilities and can occur at FCI Loretto as well. There is a professional as well as moral responsibility to safeguard those inmates' health and

well being. For the above-states reasons, we urge the court to grant the relief requested by petitioner Rathburn. Your consideration is greatly appreciated.

Respectfully Submitted,

*/s/ Arthur Rathburn*

Arthur Rathburn, ProSe

Submitted this _13_ day of October 2020

TO: Honorable Judge Paul Borman
U.S. District Court Judge

Nov 24, 2020

From: Arthur Rathburn

RE: Addendum To 3582 (C)(1)(A) Motion Herein

Your Honor

I am sending another copy of my Pro Se Motion 3582(c)(1)(A) because the first copy I sent in October has yet to appear on my docket sheet as being received. I don't know the status of the first one I sent and if indeed the court receives it, please see that the clerk of the court records it on my docket.

I am informing the court that after I drafted the Pro Se Motion enclosed, I became very ill with multiple infections. I was held in the medical wing at FCI Loretto in an isolated cell where I was attended to and monitored 24/7 for a period just short of a month. I did not have COVID-19, but did suffer debilitating infections which has left my immune system even more severely compromised than before. I was and am being treated with additional medical drugs: Amoxicilin, Cepro, Glycerin, Calcium Polycarbopl, Fluocinonide, & other medications. We now have a new outbreak of COVID-19 here at FCI Loretto. Your prompt attention to this matter is greatly appreciated.

Sincerely, Arthur Rathburn        Arthur Rathburn

Arthur Rathbun
54353039
Loretto FCI
Rural Route 276
Loretto, Pennsylvania
15940

Legal Mail!

**Federal Correctional Institution**
**PO Box 1000,**
**Cresson, Pa 16630**

"The enclosed letter was processed through special Mailing procedures for forwarding to you. The letter has neither been open nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, Please return the enclosure to the above address."

DATE: 11-24-20

RECEIVED
DEC 04 2020
CLERKS OFFICE
DETROIT

11-25-20

United States District Court
Eastern District of Michigan
Office of the Clerk, Judge Borman
Theodore Levin U.S. Courthouse
231 West Lafayette Bld. 5th Floor
Detroit, Michigan 48226



